The next case on the calendar is United States v. Bacon. The next case on the calendar is United States v. Bacon. Please stand by. May it please the court and good morning. I'm Dan Irwin with the Connecticut Federal Defender's Office on behalf of Mr. Bacon. This is fundamentally a case about the requirement that a defendant's history and characteristics be considered pursuant to 18 U.S.C. 3553A. There's little doubt, and there can be little doubt, that in a child pornography case that's admittedly serious, but nonetheless involving only 10 images, no actual physical contact with a minor, that the defendant's sexual abuse as a child at the hands of his mother is substantial, relevant, mitigating evidence. This was an event that had to scar him for life, as the district court put it with respect to many other victims. Similarly, fabricating such a claim would be a deeply cynical act that's antithetical to rehabilitation and would in most circumstances— My position on that is twofold in the alternative. The use of the word professed, I think, constitutes a finding that his claim lacked veracity. Failing that, I think the district court punted on the issue and given its importance, we were entitled to a finding. Why can't she punt? I took professed as being in effect saying, well, he says this. There are some not necessarily enough to make a finding one way or the other, but he only told the sibling—he has several siblings. The only ones he told are the ones who are dead. There are living siblings, but he didn't tell them. He told the probation officer, but either he didn't tell his therapist about it or the therapist didn't think it was something that scarred him for life because the therapist's letter does not mention this claim. I'm not saying that makes a finding. I'm not saying I don't believe it happened. It's a reason why a judge might well say, well, this is what he says. But then she goes on to say, but I don't think that that should get the weight that is attributed to it by the defense. You're telling us that that was error. Yes, and I think I have two or three responses to that. The first is, you know, we wrote this brief thinking of sort of the connotative meaning of professed. I thought it would be useful to look it up, and in fact it means a quality claimed or asserted openly but often false. But often false. Is that what you said? Yes. Isn't that about right? I mean, it's something that is said. He has an interest in saying it because it would be mitigating, and such things could be falsely claimed. But it's an agnostic word, it seems to me, by definition. This is what he says. And it seems evident that the judge had some skepticism about it, but decided evidently that she did not need to make a finding because either way, she did not think that what was asserted cut as strongly as you apparently do in his favor. And that's sort of how I read this, but maybe I'm mistaken to read it that way. I think that the record is susceptible to several different interpretations. That doesn't appear to be how the government's reading it. The government's, my understanding of the government's position will speak for himself, but that she did make the finding believe that there was no causation with respect to... Oh, no causation is perhaps a different issue. But whether it happened is the question. That's what's professed. Well, I guess the point I'm getting to is that there are one to three different ways of cutting it. One, he's lying. Two, he's not lying, but it's not relevant. And three, both are true. Using the term professed, I don't think that given the gravity of the evidence, the potential gravity of the evidence, that this was a place where she could  believe it or not to believe it. These PSRs rely on defendant self-reporting, and we frequently do that. We usually get some notice if claims, certainly significant claims, are going to be doubted. And this was not a claim about who was going to inherit the family heirloom and whether he told his cousin something in 1986. This was a deeply embarrassing, deeply stigmatizing, deeply ignominious act at the hands of his mother that would tear a family apart. And I think our society has truly come to recognize why people don't disclose this earlier. But if we read the record in the way my colleague has just described it, that what she did was not make an adverse credibility determination. You just professed in this. He stated, but I do not need to resolve the question one way or the other. I'm not making an adverse credibility determination because I'm not giving, I determined that that factor is not sufficiently tied to the crime, that it can serve as a mitigating factor or a mitigating factor to the extent that the defense is arguing. If she did that, would there be any error in that? What would be the... If she found it... If she declined to make an adverse credibility finding and moved on to this question of nexus. It would be a stronger argument for the government, but it would still be erroneous. Why would that be erroneous? Because childhood trauma is routinely weighted as significant mitigating evidence. I don't think that there's any doubt that this trauma, if believed, is pretty groundbreaking. I would point to the court, I think it's the Lopez case, but it's cited in my reply brief, where in that case the judge said there was a horrendously traumatizing childhood, but the seriousness of the events and the danger the defendant presented as evidence by his own evaluation outweighed whatever mitigating factor that had. It's a fine line to walk, of course. One doesn't want to minimize what he reports. On the other hand, the kinds of horrendous traumatizing childhoods we hear about go far deeper than this. He was already an adolescent and only lasted for four months. That's, on the one side, we've seen a lot worse in this kind of case. The other point is there's not a lot of evidence that this incident triggered a kind of antisocial personality of some kind. He's 50-something years old and this is the first time he's been accused of any kind of advances towards an underage person. Now, again, I'm not a mental health expert, so I'm not purporting to say that somehow child abuse, that's not the worst kind of abuse we've ever heard of, can't come back and bite somebody at age 58. Of course it could, and that's an issue. But I find it hard to say that a district court would be required, if the judge believed this allegation was true, to weigh that heavily. She points out, well, to the extent that you suffered from this, you should, of all people, not repeat it. Now, that's one kind of view. It may not be my view, but why isn't that a view that a district court would be entitled to take? For several reasons. The first is, look, this is a delicate issue and I'm reluctant to get into comparing different people's traumas, but there's a sort of mere juxtaposition here. He was convicted of this offense that was predatory behavior towards this young woman, and it was remarkably filthy, and I'm not she was found to be scarred for life by something that was not as significant as what my client went through. And I don't mean to be grotesque about that, but it's a reality. Second is, there's something to be said for keeping easy cases easy, and the sort of prudential interest. This was a 10-image case. This was a case where he had been in treatment for 70 sessions, I believe what the email said. It was not on the closer to 20, 30 year end of the spectrum where we routinely get evaluations. So here, the issue was that his efforts at rehabilitation, his insights into what may have led him here, and we didn't claim exclusively that it was the 13-year-old event. It was his depression, his disintegrating relationship with his wife, and some age-old trauma, and he stepped outside. So that should have been credited, and in a close case, I mean, we're talking about four months above what the government asked for in terms of its recommendation. We weren't asking for no time. We were asking for marginally less time, and that should have been weighted appropriately with findings having been made. With that, thank you. May it please the Court. My name is Neeraj Patel, and I represent the United States in this case. The District Court sentenced the defendant to 84 months of imprisonment below the guidelines range for engaging in sexually explicit chats with a 15-year-old girl, sending her sexually explicit images of himself, attempting to entice her to engage in sexual acts with him, and then ultimately soliciting child pornography from an undercover police officer posing as the girl, and then he also possessed 10 images of child pornography. The District Court's sentence was both procedurally and substantively reasonable, and I'll address the three arguments raised by the defendant. First, the District Court... Well, maybe you want to concentrate on the one that Mr. Irwin addressed orally. We have both of your briefs on the other issues. I'm not certain as to what your position is here. Are you agreeing with Mr. Irwin that the District Court made an adverse credibility finding and arguing that that was justified? No. What we're arguing is that the abuse... The claim of abuse was included in the pre-sentence report, and the District Court adopted the pre-sentence report, so therefore accepted the veracity of the claim. And in addition, when she made her remarks imposing the 84-month sentence, she again referred to the childhood experiences. But she referred to it as professed. Now, I was suggesting to Mr. Irwin that that suggests agnosticism on whether it was true or not, but you're saying it's actually a finding that it wasn't true? I'm sorry. Yes, the finding that you're saying that is... You agree with him that that was... No, I'm sorry. Now I'm very confused. You're saying the other way around. You're saying because she adopted the pre-sentence report, she actually agreed that this did happen? Yes, Your Honor. And that's why she used the word professed and that was consistent with that? She may have... I think by using that word, she may be expressing some assertion that it was true, but ultimately she adopted the pre-sentence report and accepted it. But either way, she ultimately says, I don't think it matters that much. Is that the point? Right, and I think that's the important issue here because we have to look at the reason why the defendant proffered this evidence of childhood abuse or this claim of childhood abuse. And if you look at the sentencing memorandum that he submitted prior to sentencing, he said that this childhood abuse, quote, to some extent explains his conduct. And that's at page 58 of the joint appendix. And then later in his sentencing memo, he argued that the childhood abuse diminished his culpability. And that's at page 66 of the joint appendix. So when the judge was evaluating this claim of abuse and ultimately in its remarks imposed the 84-month sentence, it said he found no causal connection because it was addressing the argument made by the defendant for the reason why they were proffering this evidence and why it was important and why they believed it was a mitigating factor. So the judge said that it found no, it gave, it essentially gave the claim little weight because it found no causal connection or nexus between the abuse and the instant offense conduct. And it's important to note that the defendant didn't submit any sort of psychological exam drawing any connection between his abuse and his instant offense conduct. The only thing he referred to were two studies that suggest a correlation between the abuse and their perpetration of, victims of abuse may perpetrate offenses later in life. But it's also important to look at what he said in the sentencing memo about that study. He said the data did not suggest that all victims become perpetrators. And that's at page 57 of the joint appendix. And he didn't offer anything to specifically show that his abuse contributed to his offense conduct. And as Your Honor alluded to earlier, he did submit a one-page letter or email talking about his mental health from his mental health provider. But again, it made no mention of his childhood abuse or how it had the burden to prove a mitigating factor. In this case, he argued the mitigating factor was that his abuse contributed to the offense conduct. So he had a burden to show that. And so while I think it is our position that the court did accept his claim of abuse, it was not obligated to give it any more weight than it did in light of the argument he was advancing that it led to the crime and resulted in diminished culpability. And as this court has repeatedly held, the particular weight to the afforded and aggravated or mitigating factor is firmly committed to the discretion of the sentencing judge. Unless there's no further questions on that issue, I was going to return to the second point that they raised in their brief, which is that the district court erred when it considered his prior conviction for public indecency in fashioning its sentence. We disagree with that. As the court noted in imposing the 84-month sentence, its sentence reflected the court's concern for the defendant's escalating conduct from simply exposing himself and then attempting to incite children several years later. I don't think there's any dispute that he did engage in that act of public indecency in front of another adult woman at a public campground. There's no dispute that the campground was a location where children could have been present. I think the counsel for the defendant conceded as much at the sentencing below that it was a family campground and families include children. And to be sure, the court initially stated it was going to draw an inference that there must have been a probable cause finding that children were present at that campground because he was originally charged not only with public indecency, but also risk of injury to a child. But counsel for the defendant then later pushed back on that inference, noting there could have been a probable cause finding on the public indecency charge, but not the other charges, which were later dismissed. And the court agreed with that. And ultimately, the court never made a finding that children were in fact present. And importantly, when the court imposed the 84-month sentence, it noted that its conduct had been to expose himself without mentioning that children were present in that prior incident, further demonstrating that it didn't make any finding that children were present or in fact present when that prior incident occurred. Finally, Your Honors, I think with both arguments, the defendant stated in his briefs that they led to substantively unreasonable sentences. And here, the 84-month sentence was well below the guidelines range of 108 to 135 months. This court has repeatedly observed that in the overwhelming majority of cases, a guideline sentence will fall comfortably within the range of broad sentences that would be reasonable. Here, the court took into account the arguments of the parties. It focused on the seriousness of the offense, his escalating conduct, and the need for specific deterrence and protection of the public and ultimately gave him a below-guideline sentence, which shows it did occur in some mitigating factors. So unless the court has any other questions, we would rest on our arguments in the brief and ask the court to affirm the judgment below. Just a few quick points, thank you. The first is that the district court didn't use the term profess once as an offhanded remark. She used it at least twice. You know, I had not intended to ask too many questions. I've already asked you one question, but you harp on the word profess as if it indicates some real doubt. But you know, in different religions, for example, people have prayers where you profess one's faith, which actually, to the contrary, suggests that there is no doubt. So I don't know why you harp on the term profess, because profess is a very complicated term that can run the spectrum. I think I agree with all the sort of premises to that question. However, this was not a religious scenario. You're asking us to focus on a word. You're putting a lot of weight on a word. It's a word that was repeated, and when you look at the dictionary definition of profess, it references the religious rituals of which you speak. It also says that it includes an expression of doubt, which I think is the appropriate use of the word in this case. And I also note to the point about the religious rituals, the Supreme Court has noted not in any great detail, but for what it's worth, with respect to inmate religious claims, that courts can the Religious Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity. There's ample evidence that it includes an expression of doubt. So I was just going to mention this was not just a mental health provider. This was a CAATSO, Connecticut Association on the Treatment of Sex Offenders rehabilitation group therapy that Mr. Bacon was in, and there's ample evidence that he disclosed all kinds of personal things that remained sacrosanct in that group and its confidentiality, but that he had been insight-oriented throughout, and that was Thank you both, and we'll take the matter under advisement.